UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAROLYN D. SCHOFIELD,<br><br>        Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Commissioner of Social Security,<br><br>        Defendant. | Case No. 2:16-cv-01044-JCM-GWF<br><br>**REPORT AND**<br>**RECOMMENDATION**<br><br>Motion for Reversal and/or Remand (#18)<br>Cross-Motion to Affirm (#19) |

This case involves judicial review of administrative action by the Commissioner of Social Security denying Plaintiff Carolyn Schofield's claim for disability benefits under Title II of the Social Security Act. Plaintiff's Complaint (ECF No. 4) was filed July 21, 2016. Defendant's Answer (ECF No. 10) was filed September 26, 2016. A certified copy of the Administrative Record (the "A.R.") was filed on October 4, 2016. *See* (ECF No. 13). This matter has been submitted to the undersigned United States Magistrate Judge for Findings and Recommendations on Plaintiff's Motion to Remand (ECF No. 18), filed on December 1, 2016 and the Commissioner's Cross-Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or Remand (ECF No. 19), filed on January 5, 2017. Plaintiff did not file a reply brief.

## BACKGROUND

  **A.**  **Procedural History.**

On February 9, 2011, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging that her disability began on February 3, 2011. AR 124. The Social Security Administration denied Plaintiff's claim on August 30, 2011. AR 102. Plaintiff then filed for reconsideration, which was denied on May 9, 2012. AR 103. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and testified at a hearing before the ALJ on May 2, 2013. AR 70-

93. The ALJ determined that Plaintiff was not disabled from February 3, 2011 through June 21, 2013. AR 124-132. Plaintiff appealed the decision of the ALJ to the Appeals Council on August 20, 2013. AR 212. The Appeals Council granted Plaintiff's request and remanded the case for a supplemental hearing with instructions. AR 139-141. Plaintiff testified at a second hearing before the ALJ on March 6, 2015. AR 45-69. Again, the ALJ determined that Plaintiff was not disabled from February 3, 2011 through September 30, 2013. Plaintiff appealed the decision of the ALJ to the Appeals Council on July 13, 2015. AR 13-14. This time, the Appeals Council denied Plaintiff's request for review on March 16, 2016, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. AR 1-6. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

**B.     Factual Background.**

Plaintiff Carolyn Schofield was born on February 11, 1968. AR 49, 74. She is 5'8" tall and weighed 140 pounds in March 2015. AR 50. Plaintiff has two daughters who were 16 and 14 at the time of the March 2015 hearing. Both daughters lived with Plaintiff and she was responsible for taking care of them on a daily basis. Plaintiff reported that she lived with her boyfriend. AR 323. Plaintiff has an Associates Degree in General Studies from the University of Nevada Las Vegas. AR 51.

**1. Plaintiff's Disability/Work History Reports and Hearing Testimony**

In her initial February 2011 disability report, Plaintiff listed the following as her disabling conditions: glaucoma; degenerative disc disease L3-L4, L5-S1; scoliosis; back injury; arthritis; hip injury; bursitis; and depression. AR 297. Plaintiff stated that she stopped working on February 3, 2011 because of her conditions. AR 297. Plaintiff reported that she previously worked as an auditor, cage cashier, cage manager and a concessions cashier. AR 298. Plaintiff was taking the following medications for her conditions: combigan; diladid; lortab; lumigan; neuronten; percocet; prednisolone; soma; temazapam; timolol; travatan; and xibrom. AR 300.

Plaintiff submitted a function report in April 2011. AR 323-330. Plaintiff reported that she would have to take medication prior to beginning her daily activities and would continue to take medication throughout the day. AR 324. Plaintiff could care for her pets and her children when she was having a good day. She stated that her children had to lift items that were too heavy for her and

that they cleaned the things that she could not. She woke up every night in pain and was only able to sleep on her left side. AR 324. Plaintiff had to be reminded to use her eye drops for glaucoma and could only cook simple meals due to her injuries. AR 325. Plaintiff was able to do the laundry by herself but only if someone else brought the hamper into the laundry room. Plaintiff could no longer do yard work and would not drive alone because of fear that she would have a glaucoma attack. AR 326. Plaintiff reported that she did not have a regular income and would go to food banks and only grocery shop when she could afford it. AR 326. Plaintiff could no longer read or make artwork due to her vision problems. AR 327. Plaintiff reported that she could lift 15 pounds; walk about one block; could not touch her toes; stand for 20 minutes; could occasionally kneel; could only walk up about 10 stairs before she was in pain; and was greatly affected by blurry vision. AR 328. Plaintiff reported that she could not handle stress very well because she would get depressed, cry and would isolate herself. AR 329. She reported using crutches, a cane, and glasses. Plaintiff also listed the following medications: percocet; soma, temazapam; neurontin; timolol; travatan; and prednisolone. AR 330.

Plaintiff submitted a second disability report on October 11, 2011. AR 33-339. Since her last report, Plaintiff had seen Dr. Bruce Snyder and Dr. Kent Wellish for treatment of her glaucoma. AR 334-335. Plaintiff reported treating at Nevada Orthopedic & Spine Center for her chronic pain and Southwest Medical Associates for "All Conditions." No other changes were noted.

Plaintiff submitted a third disability report on July 9, 2012. AR 342-348. Plaintiff reported that since her last report her hip was causing her increased pain and it had become painful to walk. Her lower back spasms were also worse. AR 342. Plaintiff reported treating at North Vista Hospital following a car accident; Vista Medical Associates for "routine health care"; and at the Wellish Vision Institute for her glaucoma and iritis. AR 343-344. Plaintiff stated that she could still take care of her personal needs without assistance but took things easy. AR 346. For example, she stayed home most of the day. Plaintiff reported that she continued to home school her children and tried to read when she could. She was no longer able to take her dog for a walk. AR 346. No other changes were noted.

Plaintiff testified at the March 6, 2015 hearing that she last worked in February 2011 as a cage cashier. AR 51. She worked as a cage cashier since 1990. Plaintiff also worked as a cage auditor and cage manager during that time. As a cage manager, Plaintiff managed the staff, reconciled funds, and

did paperwork. AR 52. Plaintiff testified that she stopped working in 2011 because she could not see due to her glaucoma. However, at the time of the hearing, Plaintiff was no longer having issues with her glaucoma, which was adequately treated with eye drops. AR 53. She still suffered from left hip bursitis and degenerative disc disease of the lumbar spine. AR 57. Plaintiff was taking medication to help with the pain from those injuries but stated that some days she had difficulty walking due to her hip pain. AR 59-60. In addition, Plaintiff continued to suffer from COPD and she took ventolin and spiriva for those symptoms. AR 59.

Upon examination by her attorney, Plaintiff testified that her two daughters (14 and 16 years old) had to cook for themselves because Plaintiff was unable to at times. AR 53. Plaintiff was also unable to clean or do her daughter's laundry because it was too strenuous. AR 54. She got frustrated easily because of her limitations and because of her pain in her hip, back, hands and abdomen. Plaintiff took tramadol to help with her pain. AR 54. This pain had been constant since 2007. AR 55. Plaintiff testified that up to February 2011, she was able to work with this pain because she worked only part-time and continued to take medication. AR 55-56. Plaintiff stated that if she was not in the constant pain, she would have returned to work. AR 56.

Plaintiff testified that she could stand for about 20-25 minutes at a time. AR 60. The ALJ then asked Plaintiff the following question:

> Well, let's say you had a job where you would be able to sit and stand say up to 30 minutes each. You can stand – you can stand one minute or you can stand 30 minutes. And then sometimes in between that you decided you wanted to sit. So you can sit between one minute and 30 minutes. And then after 15 minutes, for example, you got – you got – started feeling bad. Then you could stand. Would you be able to do a job with that kind of situation?

AR 60.

Plaintiff responded that she could try. AR 61. Plaintiff stated that she had arthritis in her hands so she would have difficulty picking up small objects. Finally, Plaintiff testified that she had not been able to see her primary care physician due to his unavailability so she did not know what his future treatment plan would be for her. AR 62. She stated that she wanted to be referred to physical therapy but the doctor denied her request. AR 62.

. . .

**2. Vocational Expert's Testimony**

Vocational Expert ("VE"), Bernard Preston, testified at the March 6, 2015 hearing. After establishing Plaintiff's prior work history as a booth cashier (light work), auditor (sedentary work), and manager (light work), AR 63, the ALJ asked the VE the following hypothetical question**:**

> If an individual who could lift 20 pounds occasionally, 10 pound frequently. This person can stand and walk up to six, sit up to six. This person would have occasional postural all including no – including no climbing of ladders, ropes, and scaffolds. The occasional postural everything else. This person would in addition to that require a sit/stand option. Let's say be able to sit up to 30 minutes any time within that one to 30 minute period. Can change from one position to the – to the next throughout the workday of course excluding breaks and things like that. With that sit/stand option, occasional posture limitations, and no ladders, ropes, and scaffolds, with 20/10, and stand and walk six, sit six, would such an individual be able to perform any of the jobs in the claimant's past relevant work?

AR 63-64.

The VE responded that the hypothetical person would be able to work as an auditor but the cashier positions would be eliminated. AR 64. However, upon clarification, the ALJ removed the auditor job from consideration because Plaintiff only worked in that position for five to six months.

The ALJ then asked the VE whether the person, as described in the original hypothetical, would be able to perform any other work that is available in the national economy. AR 65. The VE responded:

> First position parking lot cashier, DOT number 915.473-010. Physical demands at the light level. SVP skill level 2, which is unskilled. In the U.S. is 71,133 positions.
>
> Second position ticket taker, DOT number 344.667-010. Physical demands at the light level. SVP skill level 2, which is unskilled. In the U.S. is 88,936 positions.
> ...
> Last position office helper, DOT number 239.567-010. Physical demands at the light level. SVP skill level 2, which is unskilled. In the U.S. is 120,376 positions.

AR 65-66.

**3. Medical Records and Reports**

Plaintiff was seen by Kofi Sarfo, M.D. at Vista Medical Associates from April 29, 2009 through June 6, 2011. AR 367-435; 449-462; 709-720. Plaintiff presented with low back pain that did not

radiate and was a 5 out of 10 on the pain scale on April 29, 2009. AR 433. Plaintiff's physical examination was otherwise normal. AR434-435. She was treated with medication and physical therapy. On August 27, 2009, Dr. Sarfo assessed Plaintiff with low back pain, lumbar disc disease, myalgia and neck pain. AR 429. Plaintiff continued with her prescribed medications. These assessments generally continued over the course of Plaintiff's treatment with Dr. Sarfo. Plaintiff was also assessed with hypertension that appeared to be well maintained with medication. AR 400.

On June 26, 2010, Plaintiff reported that her lower back pain was increasing in intensity to a 7 out of 10 on the pain scale. AR. 380. She was advised to continue her medication regimen. AR 381-382. Thereafter, Plaintiff's pain level fluctuated between a 5 and 8 out of 10. *See e.g.,* AR 376, 372, 368, and 459. On September 20, 2010, Dr. Sarfo assessed Plaintiff with neuropathy, obesity, low back pain, and lumbar disc disease. AR 374. Once again, Plaintiff was told to continue on her medications.

On February 28, 2011 and June 6, 2011, Plaintiff presented to Dr. Sarfo for a follow-up for her lower back pain. Plaintiff reported that the pain was an 8 out of 10 and that the pain radiated into her right and left buttocks as well as the posterior right leg. AR 450, 455. She was assessed with hypertension, hyperlipidemia, low back pain, lumbar disc disease, myalgia, neck pan, neuropathy and sciatica. AR 454, 458. Plaintiff was continued on her medications.

Plaintiff presented to Reynold Rimoldi, M.D. with Nevada Orthopedic and Spine Center on December 13, 2010 for an evaluation of her lumbar spine and her left hip. AR 534. Plaintiff stated that she was involved in an auto-pedestrian accident in 2007 and had been in persistent pain since that time.[1] Plaintiff stated that her pain was a 9 out of 10. Dr. Rimoldi noted that Plaintiff had tenderness on palpation of her lumbar spine and had 10% limitation of lumbar spine range of motion. AR 534. Dr. Rimoldi found that Plaintiff had lumbar enthesopathy and a left hip strain. He recommended an MRI of Plaintiff's left hip and lumbar spine. On January 10, 2011, Plaintiff returned to Dr. Rimoldi for a follow-up evaluation. AR 533. Dr. Rimoldi reviewed Plaintiff's MRIs and stated that they showed some mild degeneration of Plaintiff's lumbar spine and mild to moderate trochanteric bursitis of her left

---

[1] Plaintiff treated at North Vista Hospital following the February 18, 2007 auto-pedestrian accident. *See* AR 547-708.

6

1  hip. AR 436, 533. Dr. Rimoldi did not recommend invasive treatment but discussed trochanteric bursa
2  injections, which Plaintiff agreed to undergo. AR 533.
3        At the request of the Bureau of Disability Adjudication, Plaintiff was examined by Dr. David
4  Mumford, M.D. on July 27, 2011. Plaintiff complained of low back pain, bronchitis, glaucoma, and left
5  hip problem. AR 474. Dr. Mumford observed that Plaintiff was able to sit comfortably without
6  shifting in her chair, could stand from a seated position and could sit up from the supine position
7  without difficulty. AR 475-476. Dr. Mumford's examination of Plaintiff was largely unremarkable.
8  Dr. Mumford noted that examination of Plaintiff's left hip showed "some decrease in flexion which is 0
9  to 85 degrees. The remainder of the ranges is normal." AR 477. Dr. Mumford found that Plaintiff
10 suffered from degenerative disk disease, chronic lumbar strain without evidence of radiculopathy, and
11 left trochanteric bursistis. AR 478. Dr. Mumford acknowledged Plaintiff's history of glaucoma. Based
12 on his examination, Dr. Mumford opined that Plaintiff could lift and/or carry 20 pounds occasionally
13 and 10 pounds frequently. She was able to stand and/or walk for 6 hours in an 8 hour workday without
14 the need for an assistive device. There were no restrictions on her ability to sit. AR 478. Dr. Mumford
15 found that standard breaks and a lunch period would provide sufficient time for Plaintiff to alternate
16 between sitting and standing. She could occasionally climb ramps/stairs; could never climb
17 ladders/scaffolds; could frequently balance; occasionally stoop/bend; and could frequently kneel,
18 crouch/squat and crawl. AR 479. Dr. Mumford opined that Plaintiff did not have any other restrictions
19 or limitations. AR 479-480.
20       Plaintiff treated at Southwest Medical Associates July 2011 through March 25, 2013. AR 505-
21 509, 722-779. She was seen for general check-ups and noted her lumbar radiculopathy, hip pain and
22 glaucoma. AR 774. Plaintiff obtained prescription refills and referrals to orthopedic specialists and
23 physical therapists for her pain symptoms. *See e.g.,* AR 770-771. Of note, Plaintiff was seen for a
24 follow-up on January 15, 2013. AR 732. The doctor noted that Plaintiff's previous x-rays and MRIs of
25 her lower back and hip were "unimpressive." AR 732. She stated that Plaintiff did not have "objective
26 evidence to warrant chronic narcotics" and recommended a slow weaning from those she had been
27 taking. Plaintiff was otherwise advised to continue with her routine check-ups.
28       Plaintiff treated at the Wellish Vision Institute for glaucoma from April 2011 through July 2012.

AR 511-530, 539-546. Plaintiff complained of burning, redness, halos in the left eye, and photophobia (extreme sensitivity to light). AR 513-521, 545. She was given medication to treat her glaucoma symptoms. AR 514-522. Plaintiff reported that she was not in pain or discomfort in May of 2012, but stated that bright sunlight caused headaches. AR 541. In July 2012 Plaintiff reported that her eyes were "doing well," but she still suffered from some a little soreness that happened when under the sun a lot. AR 539.

At the request of the Bureau of Disability Adjudication, Plaintiff was referred for an orthopedic evaluation by Richard Cestkowski, M.D. on December 16, 2014. AR 784-799. Plaintiff complained of constant pain in her lower left lumbar area and left hip region. AR 785. Her pain ranged from 6 to 9 on a 10 point scale and was 7 at the time of the evaluation. Plaintiff complained of numbness and tingling in both hands and feet. She reported that she had been a smoker for 30 years and was smoking a half a pack of cigarettes a day. AR 785. Dr. Cestkowski noted that Plaintiff was compliant with the examination and noted that there was no evidence of symptom magnification. AR 786. Following his examination, Dr. Cestkowski made the following assessment: 1) chronic lumbar pain with evidence of degenerative disc disease at L3-4 and L5-S1 with disc bulging at L5-S1. No objective evidence of lumbar radiculopathy; 2) chronic left hip pain with MRI evidence of mild to moderate trochanteric bursitis; 3) complaints of swelling, numbness, and tingling in both hands and feet with no objective evidence noted; 4) complaints of intermittent numbness of both hands and feet with etiology not clear; 5) chronic tobacco use; 6) surgery for ectopic pregnancy; 7) lymph node biopsy that was negative for cancer; 8) glaucoma of the left eye; 9) COPD secondary to chronic tobacco use; 10) right breast biopsy negative for cancer; and 11) recent radiology work-up with unknown results. AR 787.

Dr. Cestkowski found that Plaintiff could lift/carry up to 10 pounds continuously 11 to 20 pounds frequently and could never lift anything over 20 pounds. AR 791. He found that Plaintiff could sit for one hour at a time but could only stand and walk for 45 minutes at a time. AR 792. In an eight hour work day, Dr. Cestkowski found that Plaintiff could sit for 6 hours and stand and/or walk for 4 hours. Plaintiff did not require a cane to ambulate nor was it medically necessary. AR 792. She could reach, handle, finger, peel and push/pull with both hands frequently and could frequently operate food controls with both feet. AR 793. Dr. Cestkowski found that Plaintiff could frequently climb stairs but

could only occasionally climb ladders/scaffolds, balance, stoop, kneel, crouch or crawl. AR 794. Plaintiff was never to be exposed to extreme cold, unprotected heights, or dust, fumes, odors and pulmonary irritants. AR 795. She could occasionally tolerate exposure to extreme heat, vibrations and humidity and wetness. She could frequently move mechanical parts and operate a motor vehicle, although Dr. Cestkowski noted that Plaintiff should not drive if she took her sedating medications. AR 795. Finally, Dr. Cestkowski found that Plaintiff could tolerate moderate noise.

### 4. Third Party Function Reports

Plaintiff's boyfriend, Jeffrey Glenn, submitted a function report dated April 13, 2011 on her behalf. Mr. Glenn stated that he lived with Plaintiff and performed many of her tasks, such as caring for her children and pets. AR 315-316. Mr. Glenn stated that Plaintiff had difficulty lifting grocery bags, had difficulty sleeping, could not do yard work and could only cook simple meals. AR 316-318. She could, however, fill up the dog bowls, make herself simple meals, could clean the dishes, do laundry and go grocery shopping. Mr. Glenn stated that Plaintiff could no longer engage in her past activities/hobbies due to her compromised vision. AR 319. Plaintiff visited with friends and family and was able to go to church, but could no longer play with her kids during their sporting events. AR 320. Plaintiff was able to lift 10-15 pounds; could not squat, bend, or stand without pain; could only walk short distances; could not kneel; and could only sit for 30 minutes or less. AR 320. Plaintiff was able to follow spoken directions very well and could also follow written directions if she could read at the time. Mr. Glenn reported that Plaintiff utilized crutches, a cane, and glasses/contact lenses. AR 321.

### C.   ALJ's Decision.

The ALJ issued his second decision on June 17, 2015. The ALJ determined that Plaintiff was not disabled from February 3, 2011 through her date last insured of September 30, 2013 because she had the residual functional capacity ("RFC") to perform work at the light exertional level as defined in the Dictionary of Occupational Titles and the Social Security Regulations. AR 24. In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 3, 2011 through her date last insured of September 30, 2013. AR 21.

Second, he found that Plaintiff had severe impairments including "lumbar spine degenerative disc disease and left hip bursitis." AR 21. The ALJ noted that Plaintiff also suffered from the following medically determinable impairments: Heart murmur; glaucoma; chronic obstructive pulmonary disease (COPD); history of breast cyst and alopecia areata. The ALJ found that these impairments cause only a slight abnormality that had no more than a minimal effect on her ability to work. AR 21-22. Plaintiff's alleged hand arthritis was not a medically determinable impairment. The ALJ also found that Plaintiff's medically determinable mental impairment of adjustment disorder did not cause more than a minimal limitation in her ability to perform basic mental work activities and was therefore not severe. AR 22. In reaching that conclusion the ALJ considered the opinions of the State agency psychological consultants and the four broad functional areas in the disability regulations for evaluating mental disorders. AR 22-24. Third, the ALJ found that Plaintiff's impairments did not meet and were not medically equivalent to any condition listed in Appendix 1, Subpart P, of 20 C.R.F. § § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926. AR 24.

Prior to step four of the analysis, the ALJ found that:

> After careful consideration of the entire record, I found that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk up to six hours in an eight-hour day, and sit up to six hours in an eight-hour day. She could perform postural activities occasionally, but she could never climb ladders, ropes or scaffolds. She required a sit/stand option such that she could sit up to 30 minutes, stand up to 30 minutes, and alternate positions throughout the workday.

AR 24.

The ALJ found that the evidence in the record did no support the severe limitations and symptoms alleged by Plaintiff. The ALJ noted that there were inconsistencies in some of her statements. For instance, Plaintiff's description of her activities of daily living was not as limited as the ALJ would have suspected given Plaintiff's complaints of disabling pain. AR 25. The ALJ also noted several instances where the medical record did not support Plaintiff's testimony and functional reports, which led him to find that Plaintiff was not entirely credible. AR 26. However, the ALJ stated that he gave "great consideration" to Plaintiff's subjective complaints. AR 28. The ALJ gave little weight to the third-party report of Plaintiff's boyfriend because he was not competent to make a diagnosis or

argue the severity of Plaintiff's symptoms. AR 27.

The ALJ then discussed the relevant medical records. He noted that Plaintiff's treatment for her allegedly disabling impairments had been essentially routine and conservative in nature. AR 26. The ALJ discussed the consultative physical examination conducted by David Mumford, M.D. on July 27, 2011. He noted that Dr. Mumford found that Plaintiff suffered from degenerative disc disease and chronic lumbar strain without radiculopathy; had a history or bronchitis related to cigarette smoking; had a history of glaucoma; and had left trochanteric bursitis. AR 27. Plaintiff had adequate vision despite her glaucoma. Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday without an assistive device for ambulation; occasional climbing of ramps/stairs and stooping/bending; never climb ladder/scaffolds; frequently perform all other postural activities; and limited seeing. AR 27. The ALJ afforded Dr. Mumford's opinion "significant weight" because he personally examined Plaintiff and because his assessments were consistent with the medical record as a whole. AR 27-28.

The ALJ discussed the consultative orthopedic evaluation by Richard Cestkowski, D.O. on December 17, 2014. He noted that Dr. Cestkowski assessed Plaintiff with chronic lumbar pain; chronic hip pain; complaints of swelling; numbness and tingling in both hands and feet; chronic tobacco use; surgery for ectopic pregnancy; lymph node biopsy negative for cancer; glaucoma; COPD secondary to tobacco use; recent breast cancer biopsy negative for cancer; and recent radiology work-up secondary to pain in the left hip, abdomen and issues related to the pulmonary system. AR 27. Dr. Cestkowski opined that Plaintiff could lift and/or carry up to 20 pounds frequently and 10 pounds continuously; sit six hours total in an eight-hour workday; stand and/or walk four hours total in an eight-hour workday; frequent manipulative activities; frequent operation of foot controls; frequent climbing of stairs and ramps; and occasional performance of all other postural activities. AR 27. The ALJ gave "some weight" to Dr. Cestkowski's opinion. He stated that

> While Dr. Cestkowski's assessment of exertional limitations was generally consistent with the residual functional capacity above, I gave greater weight to the opinion of Dr. Mumford as Dr. Cestkowski's assessments of standing and walking limitations and environmental limitations was not consistent with the findings of the record as a whole.

AR 28.

The ALJ also addressed the findings made by the State agency medical consultants, which he afforded "significant weight." AR 28. He stated that the assessment of light exertional activity by these medical consultants was reasonable and consistent with the medical record. The ALJ determined, however, that more restrictive postural limitations were appropriate given Plaintiff's subjective complaints. He gave little weight to the medical consultants' visual and environmental assessments because he believed they were inconsistent with the medical record. AR 28.

Based on his residual functional capacity assessment, the ALJ found that Plaintiff was unable to perform her past relevant work as a booth cashier or supervisor cashier. AR 28-29. Because Plaintiff was 45 years old at the time of the decision, she was considered a younger individual with at least a high school education and ability to communicate in English. AR 29. The ALJ stated that transferability of job skills was not material to his disability determination. The ALJ concluded at step five of the evaluation process that Plaintiff was able to perform other jobs that existed in the national economy during the relevant time period. Specifically, the ALJ found that Plaintiff could work as a parking lot cashier; ticket taker; and office helper. AR 30. He therefore found that Plaintiff was not disabled during the relevant time period.

## DISCUSSION

### I.   Standard of Review.

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one

rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

### II.   Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show (a) that she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and (b) that the impairment renders her incapable of performing the work that she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A). The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform her prior work, the burden shifts to the Commissioner to show that the claimant can perform a

significant number of other jobs that exist in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007). Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The sequential evaluation process is accurately set forth in the ALJ's decision, AR 20-21, and will not be repeated here.

### III. Whether the ALJ Erred in Rejecting Dr. Cestkowski's Opinion

If a treating or examining doctor's opinion is contradicted by another doctor's opinion, the ALJ may only reject it by providing specific and legitimate reasons supported by substantial evidence. *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). *"*This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.*, quoting *Orne v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007). To satisfy the substantial evidence requirement, the ALJ should set forth a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretations thereof, and make findings. *Id.,* citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors' are correct.'" *Id.*

Here, Plaintiff argues that the ALJ failed to provide sufficient reasons for his rejection of Dr. Cestkowski's opinion and for affording Dr. Mumford's opinion greater weight. Specifically, Plaintiff takes issue with the fact that they ALJ's rejection of Dr. Cestkowski consisted of "less than two sentences." *Motion to Remand* (ECF No. 18), 9. Plaintiff also argues that Dr. Cestkowski, as an orthopedic specialist, should have been afforded greater weight than Dr. Mumford, who is board certified in internal medicine and does not have a specialty. Moreover, Plaintiff argues that Dr. Cestkowski's opinion should have been afforded greater weight because he was able to review a more complete medical record. Defendant disagrees and argues that the ALJ properly considered the opinion of Dr. Cestkowski and further argues that even if Dr. Cestkowski's opinions were given more weight, Plaintiff did not demonstrate how the limitations assessed by him would not be accommodated by the ALJ's RFC finding.

Upon review of the record as a whole, the Court finds that Plaintiff has not met her burden to justify remanding this case for further proceedings.  First, contrary to Plaintiff's assertion, the ALJ's discussion of Dr. Cestkowski's opinion spanned for more than just two sentences.  The ALJ discussed the entirety of Dr. Cestkowski's opinion and only after that did the ALJ determine to afford Dr. Mumford's opinion more weight.  *See* AR 27-28.  Next, the ALJ's decision to afford Dr. Mumford's opinion greater weight over that of Dr. Cestkowski's does not conflict with the Social Security guidelines.  20 C.F.R. § 404.1527(c)(5) states that "[w]e generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."  As Defendant points out, this is not a mandatory provision—merely advisable.

Plaintiff's argument that Dr. Cestkowski's opinion should have been afforded more weight based on the fact that he was able to review a complete medical record, including Plaintiff's x-rays and MRI, is also unpersuasive.  The x-rays and MRI scan as well as the other medical records that followed Dr. Mumford's evaluation showed some mild degeneration of Plaintiff's lumbar spine and mild to moderate trochanteric bursitis of her left hip, but invasive treatment was not recommended.  AR 436, 533.  They were otherwise found to be "unimpressive" during Plaintiff's routine check-ups.  *See* AR 732.  Therefore, these records did not provide Dr. Cestkowski with any evidence to suggest that Plaintiff's symptoms had severely worsened since Dr. Mumford's evaluation.  Moreover, the fact that Dr. Cestkowski's evaluation was largely the same as Dr. Mumford's shows that such records only evidenced a slight worsening of Plaintiff's symptoms.  This worsening was obviously considered by Dr. Cestkowski in making his assessment and was subsequently considered by the ALJ in reaching his RFC, which included more restrictive limitations than Dr. Cestkowski's opinion contemplated.  Specifically, the sit/stand option and the ability to alternate positions throughout the workday.  Therefore, even if the Court determined that Dr. Cestkowski's opinion should have been afforded greater deference (which it does not), the RFC still accommodates those restrictions.

## CONCLUSION

The ALJ did not err in affording Dr. Mumford's opinion greater weight than that of Dr. Cestkowski's.  The medical record as a whole supports the ALJ's Residual Functional Capacity

assessment, which properly took Dr. Cestkowski's opinions into consideration.

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and Remand (ECF No. 18) be **denied**, and that the Defendant's Cross Motion to Affirm (ECF No. 19) be **granted**.

DATED this 27th day of February, 2018.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge

### NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).